```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,        )
                                 )
     v.                          )   Cr. No. 08-10346-MLW
                                 )
NICHOLAS DJOKICH and             )
EGINARDO DEANGELIS,              )
     Defendants.                 )
```

MEMORANDUM AND ORDER

WOLF, D.J.                                                June 18, 2010

Defendants Nicholas Djokich and Eginardo DeAngelis were each charged with one count of conspiracy to commit kidnaping in violation of 18 U.S.C. §1201 and one count of conspiracy to commit murder-for-hire in violation of 18 U.S.C. §1958. The charges arose out of allegations that defendants and others, none of whom were citizens of the United States, plotted in Canada to kidnap and possibly murder a Canadian citizen, Richard DeVries, in the Bahamas. Djokich contended that the government, using an informant and an undercover agent, caused the defendants to incorporate the foreign and interstate commerce of the United States into their plans. Djokich moved before trial to dismiss the indictment on the ground that the government engaged in outrageous misconduct by manufacturing federal jurisdiction. See, e.g., United States v. Wallace, 85 F.3d 1063, 1065-66 (2d Cir. 1996). The court deferred ruling on the motion to dismiss pursuant to the reasoning of United States v. Barletta. See 644 F.2d 50, 58 (1st Cir. 1981)(excluding

1

"from pretrial determination any issues that require review of a substantially complete portion of the evidence to be introduced at trial").

At trial, Djokich requested a jury instruction on jurisdictional entrapment, which the court declined to give due to the absence of the required evidence of improper inducement. Cf. United States v. Rodriguez, 858 F.2d 809, 814 (1st Cir. 1988)(explaining required showing for general entrapment instruction). The jury found Djokich guilty and DeAngelis not guilty of both charges.

Djokich's motion to dismiss is, therefore, now ripe for decision. For the reasons stated below, Djokich's motion to dismiss is being denied.

"In rare and extreme circumstances, a federal court has the authority to dismiss criminal charges as a sanction for government misconduct." United States v. Guzman, 282 F.3d 56, 59 (1st Cir. 2002)(citing United States v. Russell, 411 U.S. 423, 431-32 (1973)). "Outrageous government conduct is an issue of law, and it is the province of the district court – and not the jury – to rule on a defendant's motion to dismiss on that ground." United States v. Luisi, 482 F.3d 43, 58 (1st Cir. 2007).

This power, however, "must be used sparingly," and, therefore, "the outrageous government misconduct doctrine is reserved for the most appalling and egregious situations." Guzman, 282 F.3d at 59

(citing United States v. Santana, 6 F.3d 1, 10 (1st Cir. 1993)); see also Luisi, 482 F.3d at 59 ("While the doctrine is often invoked by criminal defendants, it has never yet been successful in this circuit."). The defendant must demonstrate that the case is one of "those very rare instances when the government's misconduct is so appalling and egregious as to violate due process by 'shocking . . . the universal sense of justice.'" Luisi, 482 F.3d at 59 (citing Russell, 411 U.S. at 432).

The First Circuit has not decided whether a court may dismiss an indictment for outrageous government misconduct based on the concept of manufactured jurisdiction articulated in United States v. Archer, 486 F.2d 670 (2d Cir. 1973), and its progeny. See United States v. Vasco, 564 F.3d 12, 20 & n.4 (1st Cir. 2009)(stating that "manufactured jurisdiction . . . [is] a theory of entrapment that we have yet to examine in any detail" and "is not well-developed in this circuit"); Santana, 6 F.3d at 8-9 (stating that Archer is "an outrageous misconduct case" decided on other grounds, and declining to follow Archer's dicta regarding government misconduct). Even assuming that the First Circuit would recognize Archer as establishing a manufactured jurisdiction subset of the outrageous government misconduct doctrine, "[c]ourts that have construed Archer have taken pains to limit its applicability and to explain that 'manufactured jurisdiction' as an independent doctrine is a dubious concept." Wallace, 85 F.3d at 1065

3

(citations omitted).

As the First Circuit recognized in <u>Santana</u>, 6 F.3d at 8, although <u>Archer</u> includes discussion of government lawbreaking and the abuse of federal power, the case was not decided on this ground.  See <u>Archer</u>, 486 F.2d at 683-86 (per curiam)(denying rehearing and explaining that the holding in the case was essentially limited to a matter of statutory interpretation). However, since <u>Archer</u>, the Second Circuit has clarified that one variant of the manufactured jurisdiction doctrine is the claim that "the defendant's due process rights were violated because the government's actions in inducing the defendant to commit the federal crime were outrageous."  See <u>Wallace</u>, 85 F.3d at 1065-66 (citing <u>United States v. LaPorta</u>, 46 F.3d 152, 160 (2d Cir. 1994)).

In <u>Wallace</u>, the Second Circuit indicated that, for the due process variant of manufactured jurisdiction, the critical factors in the analysis are whether the government committed crimes, and harmed or lied to innocent third parties. <u>See</u> 85 F.3d at 1066; <u>see also</u> <u>Tribble</u>, 320 Fed. App'x at 87 (holding an "elaborate ruse" to invite defendants to rob a fictitious stash house was not outrageous); <u>LaPorta</u>, 46 F.3d at 160.  This reasoning is consistent with concerns about government lawbreaking raised in <u>Archer</u>.  See 486 F.2d at 677.  It is also consistent with the First Circuit's view of the outrageous misconduct doctrine as articulated in <u>Santana</u>.  See 6 F.3d at 4-5 (stating that the two versions of the

4

outrageous misconduct theory are extreme abuse of the defendant and overinvolvement of law enforcement personnel in the criminal conduct). The mere fact that the government caused, and intended to cause, a federal crime to be committed where only a local or foreign crime might otherwise have existed is not outrageous misconduct. See United States v. Podolsky, 798 F.2d 177, 181 (7th Cir. 1986); see also United States v. Lau, 714 F.2d 209, 210 (2d Cir. 1983).

In the instant case, the evidence proved to the court the following.  Djokich wanted to find others to assist him in recovering money by kidnaping and possibly murdering DeVries.  This scheme was discussed in Canada, by Djokich and others who were not United States citizens, for the purpose of effecting the kidnaping of DeVries, who was not a United States citizen, in the Bahamas. The informant, known as "Victor," who became a witness at trial, at a second meeting with Djokich and others, and in a telephone conversation with Djokich shortly thereafter, offered an opportunity to meet with "Peter," a purported hitman, in Boston, Massachusetts. Djokich readily accepted the offer and attended two meetings in Boston. When Peter suggested moving the location of the kidnaping from the Bahamas to Florida, Djokich readily agreed. Government agents did not apply coercive pressure to Djokich or anyone else. No government agent became involved in crimes other than those charged, harmed innocent third parties, or engaged in

physical or mental abuse of Djokich or anyone else.  Djokich, at least, was predisposed to commit crimes in the United States, as demonstrated by his statement that he wanted Peter to harm a man in Detroit after Peter took care of DeVries.

Accordingly, although the court finds that the government acted with the intent to cause a crime in violation of the laws of the United States to occur where none might have otherwise occurred, it did not engage in outrageous misconduct.  See Wallace, 85 F.3d at 1065-66; Podolsky, 798 F.2d at 181; see also Lau, 714 F.2d at 210.  There was not any coercion or abuse by the government of the defendants or of anyone else.  As the court noted in Lau, the government has a legitimate interest in identifying and apprehending criminals operating abroad who are willing to commit crimes in the United States.  See 714 F.2d at 210.  The decision whether to pursue such an investigation is a matter for the exercise of discretion by officials in the Executive branch and does not justify dismissal absent some extreme misconduct.  See Podolsky, 798 F.2d at 181.

Because the government did not engage in misconduct, much less outrageous misconduct, Djokich's Motion to Dismiss (Docket No. 55) is hereby DENIED.

                                              /s/ Mark L. Wolf
                                      UNITED STATES DISTRICT JUDGE