```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,     )
                              )
     v.                       ) Cr. No. 08-10346-MLW
                              ) C.A. No. 13-13057-MLW
NICHOLAS DJOKICH,             )
     Defendant.               )
```

MEMORANDUM AND ORDER

WOLF, D.J.                                        March 7, 2016

I.   INTRODUCTION

On June 16, 2010, Nicholas Djokich was convicted of conspiracy to commit kidnapping and murder. At trial, the jury heard recordings of conversations in which Djokich tried to hire an undercover police officer to kidnap Richard Devries, extort money from him, and then kill him. The court sentenced Djokich to 20 years in prison.

After unsuccessfully appealing his sentence, Djokich filed a motion to vacate under 28 U.S.C. §2255. In the course of briefing his motion, Djokich retained a forensic audio expert to analyze the recordings presented at trial. The expert found signs of possible tampering in several of the recordings. Relying on the expert's report, Djokich has moved for discovery relating to the creation and custody of the recordings. For the reasons explained below, the court is now allowing in part and denying without prejudice in part Djokich's motion for discovery.

II. BACKGROUND

A. Trial and Conviction

On November 20, 2008, Djokich and his co-defendant, Eginardo DeAngelis, were charged with conspiracy to commit kidnapping and conspiracy to commit murder for hire. The indictment alleged that the defendants had attempted to hire an undercover law enforcement officer to kidnap and kill Richard Devries. The allegations were based, in significant part, on conversations between Djokich and Massachusetts Bay Transportation Authority Detective Peter Pasciucco. See Docket No. 3 at 6-7. Pasciucco recorded these conversations. Id. The recordings were reviewed and transferred to a compact disc by Immigrations and Customs Enforcement Special Agent Derek Dunn. See id. at 1; see also Docket No. 289-1 at 2.

At trial, the government presented as evidence recordings of fifteen telephone conversations and two in-person conversations between Djokich and Pasciucco. See, e.g., June 3, 2010 Trial Tr. at 28, 31, 37, 41. Pasciucco testified that the recordings were fair and accurate records of his conversations with Djokich. Id. He also testified that "[his} contacts [with Djokich] were all audiotaped," June 7, 2010 Trial Tr. at 40, with the exception of two initial conversations, June 1, 2010 Trial Tr. at 105.

On June 16, 2010, a jury found Djokich guilty on both counts. The First Circuit affirmed the conviction on August 30, 2012. See

United States v. Djokich, 693 F.3d 37 (1st Cir. 2012). Djokich's conviction became final on November 28, 2012.

B. Section 2255 Proceedings

On November 26, 2013, Djokich filed a motion to vacate under 28 U.S.C. §2255. Docket No. 254. In his motion, Djokich asserts that his telephone records show several additional telephone calls between Pasciucco and himself that were not introduced into evidence at trial. He argues that the recordings produced admitted at trial may have been edited.

Djokich raises three grounds for relief based on these assertions.[1] First, he contends that there were additional, exculpatory conversations as to which the government failed to produce evidence as required by Brady v. Maryland, 373 U.S. 83, 87 (1963), and its progeny. Second, he argues that if the government did not record the additional calls, Pasciucco was not truthful when he testified that he recorded all but two of his telephone conversations with Djokich. Third, he asserts that he was denied his Sixth Amendment right to effective assistance of counsel when

---

[1] Djokich also argues, as a separate ground for relief, that he was denied effective assistance of counsel because his trial attorney failed to argue for a 3-point reduction under U.S.S.G. §2X1.1(b)(2).

3

his trial attorney failed to investigate the discrepancy between the government's evidence and Djokich's telephone records.

The government requested discovery regarding the additional telephone calls described in Djokich's motion to vacate. Docket No. 280. The court allowed this request. Docket No. 281. On February 18, 2014, the government filed its opposition to Djokich's motion to vacate. Docket No. 289.

Djokich filed a reply to the government's opposition on March 24, 2014. Docket No. 298. He included the affidavit of a forensic audio expert, Michael Garneau. Id. Ex. 4. Garneau stated that "[t]o definitively confirm or rule out possible tampering (aka. editing) would require either the examination of the actual original recordings or, at the very least, exact copies/clones of the original files." Id. The government provided Djokich with "cloned copies" of the original recordings. See Docket No. 301. The government also provided Garneau with the make and model of the devices used to record the in-person conversations between Djokich and Pasciucco. Id. The count entered a protective order prohibiting the disclosure those details to Djokich. Docket No. 302.

C. Expert Examination and Reports

Garneau examined the cloned copies of the recordings and found no signs of tampering. See Docket No. 303 at 3. Djokich then retained a second forensic audio expert, Edward Primeau. Primeau

4

allegedly conducted a more thorough examination[2] and issued a 40-page report, Docket No. 303-1 ("Primeau Rep."), and an 8-page supplemental report, Docket No. 307-2 ("Supp. Primeau Rep.").

Primeau identifies three "forensic concerns" with the cloned copies of the recordings. Primeau Rep. at 4-6. First, several recordings have "extremely low" sample rates, below the default rate Primeau expected to find. Id. at 4. Primeau states that "[i]t is easier and less noticeable to make an edit in a lower sample rate recording." Supp. Primeau Rep. at 2. Second, each telephone recording has a "secondary noise floor." Primeau Rep. at 5. Primeau explains that a second noise floor can be added when a recording is re-recorded using a speaker and microphone. See id. He also concludes that sounds in the recordings varied in quality and volume. See Supp. Primeau Rep. at 7-8. Finally, the majority of files had missing metadata information, which Primeau suggests may have been intentionally omitted. See Primeau Rep. at 5-6; Supp. Primeau Rep. at 3-4.

Primeau opines that the recordings of the telephone conversations between Djokich and Pasciucco "may have been edited" and are, therefore, unreliable. Primeau Rep. at 40. He further

---

[2] Specifically, Primeau states that Garneau did not examine the metadata associated with the cloned copies. See Primeau Rep. at 39-40.

states that these recordings show "signs of tampering" and, in his opinion, warrant further investigation. Supp. Primeau Rep. at 1. However, Primeau does not state that the recordings were actually edited.

D. Amendment and Motion for Discovery

Based on Primeau's reports, Djokich amended his motion to vacate. Docket No. 303. The amended motion includes allegations that Djokich was denied effective assistance of counsel when his trial attorney failed to retain a forensic audio expert to analyze the recordings at issue. See id. at 2-3. He also filed the instant motion for discovery under Rule 6 of the Rules Governing §2255 Procedure ("Rule 6"). Docket No. 304 ("Mot. for Discovery"). The government has opposed the motion for discovery. Docket No. 306 ("Opp. to Mot. for Discovery").

In his motion for discovery, Djokich asks the court to order Pasciucco and Dunn to submit affidavits containing specific information. These requests are, in essence, interrogatories. Djokich seeks information about the processes used by Pasciucco and Dunn to record his telephone conversations and preserve those recordings. This includes information about the specific recording devices, computers, and software used by the officers. He also seeks information about whether the recordings, recording devices, or computers have been destroyed or disposed of and, if so, how.

Djokich also seeks discovery of five pieces of documentary or physical evidence: the chain of custody logs concerning recordings at issue; access to any computers or digital devices on which the recordings were stored; copies of emails between Pasciucco and Dunn concerning the recordings; excerpts from manuals concerning the creation, preservation, duplication, and handling of digital audio evidence; and excerpts from manuals concerning the proper chain of custody with respect to digital audio files.

III. DISCOVERY UNDER 28 U.S.C. §2255

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997). Instead, "[a] judge may, for good cause, authorize a [petitioner] to conduct discovery." Rule 6(a). A petitioner requesting discovery "must provide reasons for the request [and] include any proposed interrogatories and requests for admission, and . . . any requested documents." Rule 6(b).

The Supreme Court has defined "good cause" as "'specific allegations [that] show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" Bracy, 520 U.S. at 908 (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)). The court is not required to credit allegations that are "pure speculation." Donald v. Spencer, 656 F.3d 14, 18 (1st Cir. 2011) ("baseless allegations"

that DNA testing would exonerate petitioner, without supporting facts, did not justify discovery). The court may also deny discovery where there is no suggestion that discovery would help establish a claim for relief. See Teti v. Bender, 507 F.3d 50, 60 (1st Cir. 2007). Rule 6 does not authorize "a fishing expedition." Id.

Where good cause for discovery exists, "it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." Harris, 394 U.S. at 300. As this court has previously explained, if the petitioner's allegations "'are not implausible, and . . . could, if true, entitle him to relief'", the court must permit discovery. United States v. Sampson, 820 F. Supp. 2d 202, 213 (D. Mass. 2011) (quoting Owens v. United States, 483 F.3d 48, 60 (1st Cir. 2007)). However, "the scope and extent of such discovery is a matter confided to the discretion of the District Court." Bracy, 520 U.S. at 909.

IV. DISCUSSION

Djokich requests affidavits from Pasciucco and Dunn. He also requests access to five pieces of documentary and physical evidence. The court finds that, with one exception, Djokich has established "good cause" for these requests.

More specifically, the court finds that Djokich has satisfied the procedural requirements of Rule 6(b). He has provided reasons for his requests and has described, with specificity, the

8

information he seeks. Djokich's request is, therefore, distinguishable from the kind of generalized request the First Circuit has characterized as a "fishing expedition." See Teti, 507 F.3d at 60.

Djokich seeks to prove that the recordings of his telephone conversations with Pasciucco were tampered with. Mot. for Discovery at 2-3. Alternatively, he seeks to prove policy violations and gaps in the chain of custody that call the reliability of the recordings into question. Id. If these allegations are proven, Djokich "may . . . be able to demonstrate that he is . . . entitled to relief." Harris, 394 U.S. at 300. Specifically, Djokich may be able to demonstrate that the government withheld or misrepresented the scope of certain recordings, as alleged in his Fifth Amendment claims. See Petition at 14-16. Depending on the facts established though discovery, he may also be able to demonstrate that any procedural default of those claims should be excused. See Lee v. Corsini, 777 F.3d 46, 62 (1st Cir. 2015).

The government does not appear to dispute that Djokich's allegations, if true, would support his claims. Instead, it argues that Djokich "has failed to show any realistic possibility that he could establish that the recordings were tampered with." Opp. to Mot. for Discovery at 3. The court disagrees.

As described earlier, Primeau's reports identify signs of possible tampering with 15 out of 17 recordings. See Primeau Rep. at 4-6; Supp. Primeau Rep. at 1. The government correctly notes that the reports do not establish actual tampering with the recordings. See Opp. to Mot. for Discovery at 2-4. However, they provide sufficient evidence and reasoning to elevate Djokich's request for discovery beyond "speculative theories and baseless allegations." Donald, 656 F.3d at 18; cf. Bader v. Warden, New Hampshire State Prison, 488 F.3d 483, 488 (1st Cir. 2007) (affirming denial of discovery regarding leniency agreement, where there was no evidence of an agreement, and testimony of three witness to the contrary). Djokich is, therefore, entitled to appropriate discovery under Rule 6.

The government offers innocent explanations for each of the forensic concerns identified by Primeau. See Opp. to Mot. for Discovery at 5-7. For example, it asserts that the varying sampling rates may be attributable to the use of different recording devices, and the secondary noise floor may be the result of recording a telephone conversation through an "ear bud." See id. The government's arguments are not implausible. "It may well be . . . that [Djokich] will be unable to obtain evidence sufficient to support a finding of actual [tampering]." Bracy, 520 U.S. at 909. However, that is not a valid reason to deny discovery. Id.

Djokich's claim of tampering is "only a theory at this point; it is not supported by any solid evidence." Bracy, 520 U.S. at 908. However, a plausible theory is sufficient to warrant discovery. See id. at 909. "[B]ecause [Djokich's] allegations are not implausible, and because they could, if true, entitle him to relief," the court is authorizing discovery. Owens, 483 F.3d at 60. However, it is within the court's discretion to limit the scope and extent of such discovery. See Bracy, 520 U.S. 908. Therefore, the court must consider whether any of Djokich's specific discovery requests are unwarranted.

The court finds that Djokich is not now entitled to forensic access to the computers and digital devices used by the government to store the recordings in question. As Primeau asserts, Djokich has shown good cause to examine the audio recordings and learn the methodology used by Pasciucco and Dunn to handle the recordings. Supp. Primeau Rep. at 8. He has not, however, shown good cause to examine the government's equipment.

The court also finds that certain information Djokich requests is subject to the investigative privilege. The investigative privilege applies to "information [that] will enable criminals to frustrate future government surveillance and perhaps unduly jeopardize the security of ongoing investigations." United States v. Cintolo, 818 F.2d 980, 1002 (1st Cir. 1987). However, the investigative privilege "is a qualified one," and it may be

11

"overcome by a sufficient showing of 'need.'" Id. (quoting United States v. Van Horn, 789 F.2d 1492, 1508 (11th Cir. 1986)).

The government asserts the investigative privilege with regard to the types of computers, recording devices, and software used by the government. See Opp. to Mot. for Discovery at 10. The scope of the investigative privilege includes the "precise specifications" of electronic surveillance devices. Van Horn, 789 F.2d at 1508; United States v. Rigmaiden, 844 F. Supp. 2d 982, 1002 (D. Ariz. 2012) ("Disclosure of the specific [tracking devices and software] used by the government . . . would hamper future law enforcement efforts by enabling adversaries of law enforcement to evade detection."). Information identifying the exact hardware and software used by the government could reveal the specifications of those items. Therefore, the court finds that the government is not, at least now, required to disclose the name, make, model, serial number, or other identifying information for any computers, recording devices, or software used by Pasciucco and Dunn.[3]

---

[3] It has been held that manuals relating to surveillance devices may be subject to the investigative privilege. See United States v. Rigmaiden, 844 F. Supp. 2d 982, 1002 (D. Ariz. 2012). The government has not asserted a privilege with regard to the manuals and publications requested by Djokich. See Docket No. 304 at 10. Therefore, the court is not deciding whether the investigate privilege applies to these items.

12

The government also asserts the investigative privilege with regard to the location of government computers and recording devices. The precise physical location from which surveillance is conducted is protected by the investigative privilege. See Cintolo, 818 F.2d at 1002; see also United States v. Angiulo, 847 F.2d 956, 983 (1st Cir. 1988); United States v. Harley, 682 F.2d 1018, 1020 (D.C. Cir. 1982). Djokich seeks information about the "current whereabouts" of the recording devices used by Pasciucco. Mot. for Discovery at 4. The court understands this to be a request for information about the general status of the devices, such as whether they are in use, in storage, or have been disposed of. That information is not privileged and must be provided to Djokich. However, in doing so the government may withhold any information that could reasonably reveal the precise physical location of any devices currently in use.

Djokich has not, at this time, demonstrated a need that outweighs the policies underlying the investigative privilege. See Harley, 682 F.2d at 1020. However, Djokich may, as a result of the discovery authorized by this Order, be able to demonstrate such a need in the future. Djokich may, therefore, move for additional discovery, including but not limited to renewing his request for information regarding the types of the computers, recording devices, and software used by the government, if the discovery he receives provides a substantial basis for doing so.

13

V.   ORDER

In view of the foregoing, it is hereby ORDERED that:

1.   Djokich's Motion for Discovery (Docket No. 304) is DENIED without prejudice with respect to forensic access to government computers and digital devices and with respect to information about the name, make, model, serial number, other identifying information, or precise physical location of any recording devices, computer hardware, or software used by the government.

2.   Djokich's Motion for Discovery (Docket No. 304) is ALLOWED in all other respects.

3.   The government shall, by April 8, 2016, file and serve affidavits of Peter Pasciucco and Derek Dunn containing the information requested in Docket No. 304, pages 4-9, as authorized by this Order. The government shall also produce the chain of custody logs, emails, and publications requested in Docket No. 304, page at 10, items (a), (c), (d), and (e).

4.   Djokich shall, by May 9, 2016, move to amend his Motion to Vacate or state that he does not intend to do so.

5.   If Djokich moves to amend, the government shall respond by June 1, 2016.


UNITED STATES DISTRICT JUDGE